Exhibit D





**RECEIVED**

**14  FEB 19  P12:10**



IN THE SUPREME COURT OF THE
STATE OF WASHINGTON

| | |
|---|---|
| JZK, INC., a Washington corporation, | Case No. 89193-1 |
| Respondent-Plaintiff, | **MOTION FOR STAY OF ENFORCEMENT OF JUDGMENT** |
| vs. | **RAP 8.1, RAP 8.3** |
| VIRGINIA COVERDALE, Appellant-Defendant. | |

## I.     Identity of Moving Party

Appellant-Defendant Virginia Coverdale is the moving party.

## II.     Statement of Relief Sought

Virginia Coverdale moves for an Order staying all efforts by JZK, Inc. to collect and/or enforce the trial court judgment, which consists of $600,021.00, plus interest accrued, the entirety of which is for Plaintiff's attorney fees and costs.  In the alternative, Coverdale requests that the Court issue an Order to Show Cause requiring JZK, Inc. to disclose objective evidence of the assets it asserts exist to justify the previous and ongoing collection tactics taken since entry of judgment.[1]    Since JZK, Inc. has asserted that Coverdale should be imprisoned, and a hearing is currently set in the trial court on February 21, 2014, Coverdale also requests that this Court enter an interim order suspending the trial court hearings until this Court has had the opportunity to review and decide this motion.  This request is made pursuant to RAP 8.1 and 8.3.

---

[1] A timeline demonstrating the disproportionate nature of the enforcement efforts is included with the *Declaration of Breckan Scott* filed herewith.

**MOTION TO STAY ENFORCEMENT OF JUDGMENT**
**RAP 18.8(a)- 1**

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

### III.    Grounds for Relief

This Court has the *inherent* power to issue a stay of enforcement when the actions taken to enforce the judgment appear to be used solely for the purposes of intimidation and harassment.    As explained below, JZK, Inc.'s actions and resources expended in enforcement of the judgment are in such gross disproportionality to any possible benefit that could be recovered, that it cannot be the product of rational action. JZK, Inc. has had actual knowledge that Coverdale has no assets, and thus there is no scintilla of possibility of collection, yet it has continued in relentless pursuit nonetheless.  The only logical conclusion is that JZK, Inc.'s actions have been taken for improper purposes.  The trial court has refused to take action, and thus there is no other mechanism except this Court's inherent power to prevent the harm from continuing.  In the absence of action, Ms. Coverdale[2] faces the very likely and imminent threat of being left penniless, homeless, without a vehicle, without the financial means to pay the judgment or otherwise protect herself from JZK, Inc.'s constant barrage.  She also now faces a deprivation of epic proportion – the loss of her freedom, since JZK, Inc. is now urging that the trial court impose imprisonment.

RAP 8.1 provides a mechanism for stay of enforcement as a matter of right by filing a bond or cash with the trial court in an amount equal to a money judgment, plus the reasonably anticipated fees and costs that the opposing party will incur on appeal.  *RAP 8.1(b)(1), RAP 8.1(c)*.  This mechanism does not require the appellate court's involvement, but is instead effective upon deposit, pending any objection by the opposing party.  *Id.*  This method obviously requires that the appellant have the necessary funds and/or property to post with the trial court.

---

[2] As well as her child, since Ms. Coverdale is a single mother.

**MOTION TO STAY ENFORCEMENT OF JUDGMENT**
RAP 18.8(a)- 2

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

Although the trial court does not have authority to stay execution of judgment without posting a bond or security, the appellate court is given considerably more discretion to make necessary orders to "insure effective and equitable review." RAP 8.3 provides that "…the appellate court has authority to issue orders, before or after acceptance of review or in an original action under Title 16 of these rules, to insure effective and equitable review, including authority to grant injunctive or other relief to a party. The appellate court will *ordinarily* condition the order on furnishing a bond or other security." (Emphasis added). A party seeks relief by filing a motion as provided in Title 17.

In sum, RAP 8.3 is a discretionary rule giving the reviewing court the authority to stay enforcement of judgment, with or without requiring the party requesting the stay to post bond, under appropriate circumstances. RAP 1.2(a) also provides additional authority for the appellate court to use its discretion to stay enforcement: "These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits." The circumstances at issue clearly support a stay of enforcement to insure effective and equitable review. In the alternative, if additional information is needed prior to entering the requested stay, the Court should issue a Motion/Order to Show Cause, requiring JZK, Inc. to provide an objective basis showing that Ms. Coverdale does, in fact, have assets which justify the aggressive collection tactics demonstrated since entry of the judgment. This request is particularly important, since JZK, Inc. is now apparently seeking Coverdale's imprisonment, and has noted another hearing on the matter for February 21, 2014.

**A. Relevant Factual Background**

On July 19, 2013 the trial court judge entered summary judgment in favor of JZK, Inc. on its breach of contract claim; it asserts that Ms. Coverdale violated

**MOTION TO STAY ENFORCEMENT OF JUDGMENT**
**RAP 18.8(a)- 3**

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

the secrecy provision in its standard customer "Conditions of Participation" prohibiting the release of "any information" when she released a video on youtube which contained some footage of a JZK, Inc. event. It is undisputed that she had not been a customer for over two years when she released the video, and that the footage of the JZK, Inc. event was sent to Ms. Coverdale anonymously on a flash drive via the U.S. Mail. *Decl. Coverdale*.

The final judgment made a preliminary injunction on any further dissemination of the video permanent, but also imposed a $600,021.00 monetary judgment against Ms. Coverdale. That judgment was entirely for attorney fees and expenses.

<u>JZK, Inc.'s Unreasonable and Prejudicial Collection Practices</u>

Since entry of the judgment, the trial court docket entries have increased from 400 to 568 – meaning that, primarily due to the collection efforts, an additional 168 entries have been filed.

*Post Proceeding Deposition*

Three business days after the judgment was entered, JZK, Inc. sent Ms. Coverdale a Notice of Deposition for a post-proceeding deposition seeking all of her financial information for the preceding 10 years, the identity of bankruptcy attorneys she has consulted (and any forms/communications to those attorneys), and the identity of those paying any of her legal expenses. *Decl. Scott, Exhibit A* (Notice of Deposition). After Ms. Coverdale sought a protective order, the Court limited the timeframe to 2006, and ordered that the identities of the bankruptcy attorneys consulted and the individuals contributing towards legal expenses were protected. She then promptly submitted to a half-day examination, and provided all responsive and existing documents in response to JZK, Inc.'s request. When the documents were provided, the identity of one of the bankruptcy attorneys was

MOTION TO STAY ENFORCEMENT OF JUDGMENT
RAP 18.8(a)- 4

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

inadvertently omitted from redaction. Rather than respect the Court's directive, JZK, Inc. instead proceeded to communicate its intent to use the inadvertent omission to attempt to obtain the protected information nonetheless. *Decl. Scott, Exh. B* (8/27/13 Email from J. Grant).

*Interference with Homestead Exemption/Loan Modification*

While this case was pending, Ms. Coverdale's mortgage became distressed, and she sought a loan modification in order to avoid foreclosure. She did not have equity in the homestead in excess of the exempt amount - it was "under water" by a significant amount. All of the loan modification documents were provided to JZK, Inc. at its request. *Decl. Scott, Exh. C* (8/16/13 Email with Production Attached). However, despite having received ample information that there was no equity available to satisfy the judgment, JZK, Inc.'s counsel insisted on having conversations with the loan servicing company directly.

On August 23, 2013 JZK, Inc. filed a "Motion for Order Directing Defendant to Authorize Release of Information," claiming that it sought only to obtain information relevant to the collection efforts – although all necessary documents had been provided. Coverdale's counsel contacted the loan servicing company, including its counsel, and was informed that JZK, Inc.'s counsel had, on more than one occasion, clearly communicated to the loan servicer that it wanted to stop the loan modification and "buyout" the mortgage – thus allowing it to foreclose directly, which it could not do as a judgment creditor/junior lienholder. Coverdale plead this in Response to JZK, Inc.'s Motion, supported by sworn declarations confirming that JZK, Inc. had told the servicer it wanted to buyout the mortgage. Coverdale's counsel confirmed in an email to the loan servicer the content of the verbal confirmation of JZK, Inc.'s attempts. *Decl. Scott, Exh. D* (Confirmation Email). In its Reply (without supporting sworn

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW. PLLC
P.O BOX 1123 ▪ YELM. WA ▪ 98597
TEL. (360) 960-8951 ▪ INFO@BRECKANLAW.COM

declaration), JZK, Inc. accused Ms. Coverdale and her counsel of "McCarthyism," false accusations, *ad hominem* attacks, and "mendacity," as well as engaging in a "campaign of assassination" as measured by its "cruelty [and] recklessness." The inherent flaw in those inventive characterizations is that neither Ms. Coverdale nor her counsel presented any false information, because, in fact, JZK, Inc. via its counsel did engage in efforts to interfere with the homestead exemption by covert attempts to purchase the mortgage. *Id.*

Interestingly, when pressed about why direct communications were necessary, given that all the relevant information about the mortgage had been provided, JZK, Inc.'s counsel would not answer directly, and instead stated that his answer had three points: 1. They wanted to know "what was happening," (which had already been produced via the documents), 2. JZK, Inc. wants to get paid, and 3. They will do "whatever they can to attain those goals." *Decl. Scott, See also Exh. E to Declaration* (9/20/13 Declaration). The subsequent escalation of harassing tactics without regard to possibility of economic return is illustrative of the intent behind the statement that JZK, Inc. will do "whatever they can."

Most recently, Ms. Coverdale's home narrowly avoided being sold at a foreclosure auction, because a friend loaned her the money to bring it out of arrears – making the payment directly. It is believed that JZK, Inc. would have made an attempt to purchase the home at that auction, and that its representative went to that auction intending to bid on the home, but was surprised to see that it had been removed from the sale. *Decl. Coverdale.*

*Attempts to Obtain Personal Vehicle*

Ms. Coverdale had a single personal vehicle, which was the only available transportation for herself and her child – being deprived of transportation, even temporarily, would have caused extreme hardship. The vehicle was a 2004

MOTION TO STAY ENFORCEMENT OF JUDGMENT
RAP 18.8(a)- 6

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

1   Nissan Xterra, with almost 90,000 miles, bald tires, the brakes needed replacing,

2   there were issues with both the internal and external condition, a cracked

3   windshield, inoperable electronic components, and it was badly in need of fairly

4   extensive servicing.

5       On August 28, 2013 JZK, Inc.'s counsel sent an email asking if Coverdale

6   would "voluntarily deliver her vehicle." *Decl. Scott, Exh. F* (8/28/13 Grant

7   Email). In response, the Kelley Blue Book value was provided, showing that the

8   FMV of the vehicle was only $2,927.00, less than the statutory exemption amount

9   of $3,250.00. *Decl. Scott, Exh. G* (9/5/13 Scott Email and KBB Value). JZK,

10  Inc. responded with a valuation of $3,740.00.[3]  At the outset JZK, Inc. asserted

11  that the highest potential non-exempt value was $490.

12      JZK, Inc. nonetheless proceeded with obtaining a Writ, *ex parte*, which

13  Coverdale moved to quash as soon as she became aware that it had been issued.

14  When JZK, Inc.'s Blue Book valuation submitted with its Response indicated,

15  again, that the highest non-exempt amount claimed was now between $490.00

16  and $604.00 (*Decl. Scott, Exh. H*, JZK, Inc.'s KBB Values from Response to

17  Motion to Quash*)*, Coverdale's counsel proposed a compromise –the parties could

18  arrive at an agreement as to the non-exempt amount, and Ms. Coverdale would

19  borrow the funds from someone to pay that amount. *Decl. Scott, Exh. I*, (10/16/13

20  Email Requesting Call to Resolve).   JZK Inc.'s counsel indicated he would

21  present the option to his client; JZK, Inc. apparently declined to resolve this issue

22  by accepting the non-exempt amount.  Coverdale also offered, alternatively, to

23  stipulate to the vehicle being presented at auction, but simply requested that she

24  retain use of the vehicle in the interim while she sought alternative transportation

25  – which is specifically contemplated by RCW 6.17.190 (Sheriff may allow debtor

---

[3] JZK, Inc.'s counsel had stipulated to the condition of the vehicle as "fair."

**MOTION TO STAY ENFORCEMENT OF JUDGMENT**
**RAP 18.8(a)- 7**

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

to retain property until sale upon written agreement of creditor). *Decl. Scott, Exh. J,* (11/4/13 Email Re: Retain Pending Auction).

JZK, Inc. was not satisfied with these reasonable solutions – either of which would have allowed a single mother to retain transportation; saved numerous subsequent court appearances due to the ensuing motion practice; prevented at least one additional deposition; the parties would not be currently facing an upcoming slew of motions noted by JZK, Inc. – all but one being somehow related to the vehicle issue; and, of course, Ms. Coverdale would not currently be threatened with imprisonment by JZK, Inc. Instead, at the hearing on 10/18/13, the Court ordered appraisals to determine the value. Ms. Coverdale's appraisal from the Nissan dealership was $2,652.00 - well below the exempt amount. JZK, Inc. hired a professional appraiser, who travelled from Port Orchard to Yelm, WA, and charged $350.00 for the appraisal. The resulting appraisal did not compare values of similar vehicles in Washington; the comparison vehicles appeared to be in excellent condition, and were from dealerships in Tennessee, Arizona, and Southern California, resulting in an inaccurate and inflated appraisal.

The Nissan dealership was not willing to participate further in the appraisal process by selecting a third "tie breaker" appraisal. When JZK, Inc. was informed of that, it again rejected the option of Ms. Coverdale retaining the vehicle pending auction. Instead, on 11/4/13, it offered Coverdale $3,250.00 to purchase the vehicle outside of the appraisal/execution process. After the offer was communicated to her, she obtained an offer of $3,500.00 from a private party, and, with a severely past due electric bill that was close to being disconnected, took the second offer and paid the non-exempt amount of $250.00 to the electric company. All documentation relating to the sale – including a copy of the

MOTION TO STAY ENFORCEMENT OF JUDGMENT
RAP 18.8(a)- 8

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

cashier's check and title, and payment to the utility, was provided to JZK, Inc.
*Declaration Coverdale, Declaration Scott.*

JZK, Inc. then filed a Motion to Shorten Time and Motion to Enjoin Transfer of the vehicle. At the hearing on 11/14/13, the trial court suggested that the parties agree that Coverdale would pay the non-exempt portion of the sale price ($250.00), but set another hearing date for 11/22/13. Both verbally after that hearing, and via email, Coverdale's counsel attempted to resolve the issue by following the Judge's suggestion, i.e. Coverdale would pay the $250.00 to JZK, Inc. The response from JZK, Inc., again, was simply a demand for the vehicle without allowance for interim use. *Decl. Scott.*

*Ongoing Attempts to Obtain the Vehicle and Imprisonment of Coverdale*

A series of significant motion practice ensued. JZK, Inc. filed an Amended Motion to Suspend Transfer of Assets and for Injunctive Relief, and, most recently, has noted up several upcoming motions, including: Motion to Amend the Complaint to Add the Purchaser; Motion for Order to Show Cause Re: Contempt (based on an order that has been superseded); and Motion to Invalidate Fraudulent Transfer. JZK, Inc. also filed a "Status Report" to the trial court indicating that Ms. Coverdale should now be imprisoned.

The **necessity of considering the alternative of <u>imprisonment</u>...now appears to be the <u>most effective remedy</u>** available for this Court to gain full compliance with its Orders, those already issued and those likely to be issued in the future.

*Decl. Scott, Exh. K,* Excerpt from JZK Inc.'s 12/23/13 "Status Report" to Trial Court, Pg. 4:1-7. (Emphasis added).

Hence, JZK Inc. has gone to the point of seeking the imprisonment of a judgment-proof single mother – a consequence which Coverdale faces at a hearing JZK, Inc. noted, currently set for February 21, 2014.

**MOTION TO STAY ENFORCEMENT OF JUDGMENT**
**RAP 18.8(a)- 9**

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW. PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

1     Additionally, it has already deposed the purchaser – who confirmed it was

2 a bona fide transaction. Yet – the never-ending motion practice with no possible

3 chance of positive economic return continues – and has now escalated to JZK,

4 Inc. urging imprisonment. Again, the maximum non-exempt value JZK, Inc.

5 originally placed on the vehicle was $604 – which, at the time, Coverdale offered

6 to pay an agreed upon non-exempt value in that range. JZK, Inc. rejected that

7 option, as well as Coverdale's proposal that she simply be able to use the vehicle

8 in the interim prior to auction. Even if the inflated appraisal using out-of state

9 vehicles gave $4,141.00 as the non-exempt value – it is pennies compared to the

10 overall judgment of $600,021.00, and imprisonment will not change the owner of

11 the vehicle, nor provide Ms. Coverdale the funds to pay the $3,000.00 the Court

12 ordered her to pay as a "sanction" for the contempt charge.[4] This is not a

13 specialty or high value vehicle – there is no legitimate purpose for JZK, Inc.'s

14 tactics, which have now escalated to a point which cannot be ignored: Potential

15 debtor's imprisonment for a single, unemployed mother with no significant

16 resources or assets, simply because she took the offer that at least allowed her to

17 keep the lights and heat on in winter.

18     *Harassment of Innocent Third Parties*

19     JZK, Inc. has already deposed the individual who purchased the vehicle,

20 and is now seeking to amend the complaint to add him as a party to pursue a

21 fraudulent transfer claim based on the purchase of the vehicle – a copy of the

22 cashier's check, as well as the title transfer, have been provided to JZK, Inc.

23     JZK, Inc. has also sought to depose two people who live with Ms.

24 Coverdale – one of whom has suffered severe detrimental effects from being a

25 customer of JZK, Inc. and subjected to its predatory business practices. *Decl.*

---

[4] This Court recently granted Coverdale's Motion to Consolidate the appeal of that contempt order with this case.

**MOTION TO STAY ENFORCEMENT OF JUDGMENT**
**RAP 18.8(a)- 10**

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW. PLLC
P.O BOX 1123 • YELM. WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

*Wortberg* The other, while not a former customer, was married to a customer whose involvement with JZK, Inc. led to financial destitution, instability of the home, and the homelessness of her children. *Decl. Schmidt.* The asserted purpose for the depositions is that small contributions towards expenses such as utilities and groceries (basically what is keeping the lights on now) is subject to garnishment as "income" to Ms. Coverdale. *See, Decl. Scott, Exh. M* (10/11/13 Email from Grant stating that contributions to household expenses are "an occurrence which appears to be income, or other form of asset received, subject to garnishment.").

      *Effect on Public/Other Customers/Potential Claimants: Including Harassment and Fear Via the Media and Internet*

      One of the bases for the appeal is that the secrecy clause in the contract violates public policy, and chills customers from coming forward to either bring their concerns into the public sphere, or assert their own claims. Even the aggressive subpoenas for information concerning the private online activities of potential witnesses while the case was pending at the trial court, as well as the extensive use of private investigators, caused several to renege on their willingness to participate in the litigation. *Decl. Scott.* The chilling effect that these post-judgment tactics have, both on new cases and in securing witness testimony in the event of remand for trial, is profound. Securing cooperative witnesses who wouldn't rather risk perjury over JZK, Inc.'s retaliation was challenging before. *Id.* The more the post judgment tactics go unchecked, the sceptre of fear of future retribution increases: If I testified could I lose my home, my car, my livelihood and reputation too...? Many of these people are also subject to the same secrecy clause which JZK, Inc. claims Coverdale breached, and no amount of assurances is sufficient to overcome fear of losing everything.

**MOTION TO STAY ENFORCEMENT OF JUDGMENT**
**RAP 18.8(a)- 11**

BRECKAN C.L. SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

And the collection actions certainly have not been kept quiet. In addition to the front headlines in the local newspaper, the Nisqually Valley News, such as that run on January 2, 2014 that "JZK, Inc. Says Imprisonment an Option for Coverdale," JZK, Inc. also has a PR company and employees running a full-court press. The headlines that former customers, already reluctant to speak out about their concerns, are seeing include: "Coverdale in Contempt for Selling Car," "JZK, Inc. Goes After Coverdale's Car," "Judge: JZK, Inc. Entitled to Info on Ex-Student's Property," "Lawyer: JZK, Inc. trying to buy Coverdale's mortgage," and "Virginia Coverdale ordered to pay JZK, Inc. $600k." *Decl. Scott.*

Meanwhile, JZK, Inc. management are slandering Ms. Coverdale both in the community and on social media. For example, the "Legal Affairs Liaison" posted publicly that Ms. Coverdale is "not well," and "Her family knows it," "She hides it from her friends and fan club," and that those friends "feed her addiction." *Dec. Scott, Exh. N* (Facebook Screenshot with relevant post highlighted). These are blatant falsehoods, and are part of a scheme of tactics to embarrass and harass an everyday consumer who is simply exercising her rights to appeal, in the hope that doing so will help herself and others break from the contractually-imposed silence that allows JZK, Inc. to engage in dangerous, unfair, and deceptive business practices: Practices which also ensnare unwitting new consumers.

The message conveyed is clear: If you defy us, we will sue and pursue you with every tactic available until you run out of energy, resources, or sanity.

*JZK, Inc.'s Refusal to Accept Coverdale's Only Non-Exempt Asset*

At the post-proceeding deposition in August 2013, Coverdale informed JZK, Inc. that she has the right to collect $16,000.00 pursuant to a settlement agreement, and brought a copy of the agreement. It is transferable, and Coverdale offered to assign it without incident. JZK, Inc. has, so far, expressed no interest in

**MOTION TO STAY ENFORCEMENT OF JUDGMENT
RAP 18.8(a)- 12**

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

Case 17-04014-BDL   Doc 40-4   Filed 10/11/17   Ent. 10/12/17 09:38:45   Pg. 13 of 21

that asset – instead, opting to pursue a personal vehicle of dubious value, and which certainly does not have sufficient value to justify what has now been thousands of dollars in attorney fees to pursue. Coverdale *again* referenced the availability of that asset more recently, and, *again*, without any substantive justification, JZK, Inc. has instead pursued options which have no potential for economic gain, but do have the effect of causing distress to Coverdale. *Decl. Scott, Exh. L* (12/27/13 Email Correspondence).

*JZK, Inc.'s Unjustifiable and Deceptive Motion Practice Tactics*

On December 27th and 31st, 2013, Coverdale's counsel specifically advised that she would be unavailable until February 14, 2014. *Id.* JZK, Inc. nonetheless noted multiple motions during that time period, as well as depositions, and refused to adjust the dates of the hearings – thus requiring a specially set continuance hearing during the unavailability. Despite the Court's order that counsel's unavailability must be respected through February 14, 2014, JZK, Inc. subsequently noted another motion hearing which placed a deadline for Coverdale that fell within the unavailability. *Decl. Scott.*

Additionally, JZK, Inc.'s counsel falsely asserted that he had "...scheduled both of these [post-proceeding examinations of Coverdale and an additional witness] to occur on the Supplemental Proceeding Calendar" for January 17, 2014. *Id.* Coverdale confirmed with the Court that no such proceeding, or any proceeding in this matter, had been scheduled for that date. *Id.* JZK, Inc.'s counsel did not respond to clarify, or dispute that he had, in fact, falsely claimed that the matter had been set on the court's calendar. *Decl. Scott.*

*Justice Requires This Court to Intervene*

Coverdale has repeatedly attempted to curtail the harm caused by JZK, Inc. at the trial court level, but is faced with a trial court which asserts that a

**MOTION TO STAY ENFORCEMENT OF JUDGMENT**
**RAP 18.8(a)-** 13

BRECKAN C.L. SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

Case 17-04014-BDL   Doc 40-4   Filed 10/11/17   Ent. 10/12/17 09:38:45   Pg. 14 of 21

litigant is not required to have a proper purpose when using the power of the judicial system:

> MS. SCOTT: If you look at the plain facts and the financial economic reality, <u>they were going to lose money on this writ from the beginning.</u> **There can be no proper purpose.**
> THE COURT: <u>**I think that's their choice, though, and it's not an issue for me.**</u>
> *Exh. P, Decl. Scott,* (10/18/13 Hearing, Pg. 7:20-25)(Emphasis added).

JZK, Inc. has used the directive that it need not have a proper purpose – i.e. financial gain – when engaging in post-judgment collection tactics. Not surprisingly, in contrast, Coverdale has suffered greatly from the directive.

As early as August 30, 2013, when briefed on the legal argument and authority prohibiting JZK, Inc.'s actions, the trial court judge made it clear that he is unwilling to comprehensively consider JZK, Inc.'s actions in order to rein in post-judgment abuses:

> Let me tell you what I do not think this matter is about here today. <u>**This matter is not about what the law is or is believed to be in regard to homestead exemptions**</u>. That matter is not before me today, even though I received a 15-page brief [discussing Coverdale's arguments that] ... the plaintiffs are violating the law in what she believes is their intent to...collect monies...violation of the...homestead exemption statute. That's not before me, either. <u>**I am not going to involve myself in saying I want to deal with what is taking place right or wrong on a daily basis**</u> unless there is a properly framed motion before me.[5]
> *Exh. P, Decl. Scott,* (Excerpts of 8/30/13 Hearing, Pg. 11:5-18)(Emphasis added).

The implication that he would take into consideration abuses if brought in a separate motion seems to be in conflict with the history of consistent expressions that the parties are "litigious," and the trial court's disdain for "paperwork" when issues have been brought before the trial court:

---

[5] The briefing was a response to JZK, Inc.'s "Motion for Order Directing Defendant to Authorize Release of Information." When advised that CR 37 applies to a motion to compel Coverdale to give authorization, and thus explicitly authorizes any necessary protective orders, the judge stated that he didn't "...believe this is a motion to compel, although that may be the end result."

**MOTION TO STAY ENFORCEMENT OF JUDGMENT**
**RAP 18.8(a)- 14**

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

"It is clear that there have been almost 375 documents filed in this particular case. It is clear that in almost every situation when there is an issue, there is a huge load of paperwork." *Id.*, (Excerpt of 6/28/13 Hearing, Pg. 5:15-18). "I've surely thought that this has been litigious from the very beginning." *Id.,* (Excerpts of 8/30/13 Hearing, Pg. 10:16-17). "I have to tell you that this matter, like some others, seems to take on a life of its own." *Id.,* (Excerpt of 8/30/13 Hearing, Pg. 10:23-24). Instead of recognizing and implementing practical solutions, the trial court seems to gloss over the injustice with platitudes: "I think I've used the term before *magic wand*. I think I maybe even have said a couple times I wish I had a magic wand to just wave and fix everything about this case." *Exh. P., Decl. Scott* (Excerpts of 11/22/13 Hearing, Pg. 3:10-13). Followed closely by expressions hinting of lack of engagement: "I've also told you that when I issued my ruling, which I understand has been appealed...that, I thought I was through with the case." *Id.*, Pg. 3:14-18. This is a consistent sentiment expressed at nearly every hearing, e.g. "...and let me just state that, I think I've said before, that I thought I was through being the judge assigned..." *Id.,* (Excerpt of 10/18/13 Hearing, Pg. 4:2-4).

There is at least basis for valid concern that the trial court's statements bely an underlying sentiment resulting in Orders that do great injustice. The trial court's assertion that it does not need to understand the circumstances prior to issuing Orders carrying significant potential for serious abuse is one example:

The motion that is before me today is whether or not the plaintiffs have the right to receive information from this LLC... **I don't know what all that information might be, nor do I know for sure what a modification would be.** I understand that in this day and age there are often modifications to mortgage or loan agreements that adjust the amount of payments, set the terms or change the terms.

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

**That may be the case, may not be the case here, but I know of no reason that the plaintiffs do not have the right to this information.**
*Exh. P, Decl. Scott,* (Excerpts of 8/30/13 Hearing, Pg. 11:19-12:5)(Emphasis added).

The statement begs the question: If the Judge did not know what "all that information might be," in regards to the post-judgment discovery requested, then how can he possibly "...know of no reason that [JZK, Inc. does] not have the right" to it? Particularly since the only evidence presented was that all relevant mortgage-related information had already been provided – JZK, Inc. was not even asked to enunciate what "information" was still missing.

Coverdale's counsel has repeatedly endeavored to implore the trial court to issue orders which at least, to some degree, would curtail overreach. The following exchange occurred after the Judge's oral ruling was complete, and is illustrative of the trial court's oft confusing and frequently conflicting statements:

> MS. SCOTT: Your Honor, I would request that all proceedings be required to proceed under 6.32. We agreed in further cooperation –
> THE COURT: Excuse me. First of all, I want you to tone it down.[6] I have not spoken to you about your tone of voice, but it's quite clear that you are very involved emotionally in this and I want you to proceed professionally.
> MS. SCOTT: I understand.
> THE COURT: **So if you have a motion for me, go ahead and make it.**
> MS. SCOTT: Thank you, Your Honor. First of all, I would like to clarify that I am not emotionally -- inappropriately emotionally invested in this case. What I am is frustrated that an organization with vastly superior resources --
> THE COURT: All right. I don't want to hear that right now.
> MS. SCOTT: I understand, Your Honor, but I need to make a record because we are on appeal right now and my client and myself are being pursued and harassed and subject to these kind of [inappropriate] tactics... it is the duty of the trial court...to step in and restrict that. There is no evidence before Your Honor except our -- Virginia Coverdale and my sworn declaration...
> THE COURT: Excuse me. I'm going to stop you here. If you want to make a motion --

---

[6] The basis for Judge Tabor's assertion that he wanted Ms. Scott to "tone it down" because she was "emotional" is unclear, as there had been no prior colloquy to the single sentence spoken, and the Court had (without interruption) just finished oral ruling, which is the appropriate time to suggest additional details for the written order. Counsel has observed that the Court seems to be more receptive when she modifies her demeanor and tone to be "softer" and "submissive," as well as when she modifies her language to remove assertive statements. *Decl. Scott.*

**MOTION TO STAY ENFORCEMENT OF JUDGMENT**
**RAP 18.8(a)- 16**

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW. PLLC
P.O BOX 1123 ▪ YELM. WA ▪ 98597
TEL. (360) 960-8951 ▪ INFO@BRECKANLAW.COM

MS. SCOTT: **I move that all further proceedings —**
THE COURT: **I'm talking about appropriately made. I don't entertain off-the-cuff motions.**
*Exh. P, Decl. Scott,* (Excerpts of 8/30/13 Hearing, 12:23-14:10)(Emphasis added).

After directing counsel to make a motion regarding further proceedings, the Court then apparently changes course and indicates that it won't entertain a motion. The apparent refusal to consider reasonable alternatives, even in the absence of any articulable basis by JZK, Inc. for disagreement with the alternative is also disturbing. For example, Coverdale proposed that the Order disclosing the mortgage information allow the information to be obtained, but otherwise restricting verbal communication/questioning to formal proceedings. *Exh. P, Decl. Scott,* (Excerpts of 8/30/13 Hearing, 16:19-17:20 ). JZK, Inc. did not provide basis for its need to *speak* with the mortgagor, except that it shouldn't be "handcuffed," information may exist about the "process of dealing with paying a debt," and it "should be entitled to talk to the representatives..." *Id.* The trial court, without recognizing that absent the requested specificity the Proposed Order would have the effect of allowing conversations, simply "resolved" the matter by stating "I'm not making any ruling about any conversations in that regard. All I'm ordering right now is that this information be disclosed." *Id.*, Excerpt of 8/30/13 Hearing, Pg.17:17-20 ("Information" which the Judge himself candidly admitted that he did not know "what all that information might be").

Even if the Court is hesitant to order the stay, given Coverdale's inability to post a bond, at face value – as an alternative, an Order requiring JZK, Inc. to Show Cause, presenting objective evidence that Ms. Coverdale has assets justifying continued enforcement of the judgment would at least allow this Court oversight into what has become an untenable, vicious, and unjustifiable attack on Ms. Coverdale by a corporate entity with vastly greater resources to spend on

BRECKAN C.L. SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

tactics which harass, oppress, and, further, to intimidate potential litigants and witnesses into continued silence.

## IV. CONCLUSION

There has never been any reasonable dispute that Ms. Coverdale's financial situation certainly qualifies her as "indigent." She is unemployed (due in large part to the impact that JZK, Inc.'s statements have had on her ability to obtain clients), and a single mother. A full inventory and valuation of Coverdale's assets[7], including supporting declarations, is attached as Exhibit O to the Declaration of Scott. It is clear that she does not have assets to either satisfy the judgment, or to justify JZK, Inc.'s "scorched earth" collection tactics.

In sum, JZK, Inc. made it clear that it would do "whatever it takes," and, to that end, has: 1) Interfered (and continues to interfere) with Coverdale's mortgage; 2) Misrepresented its actions in Court pleadings by denying that its counsel attempted to halt the modification and surreptitiously purchase the mortgage; 3) Aggressively, and without regard to the likelihood of financial gain, pursued a personal vehicle of dubious value; 4) Repeatedly refused to compromise to avoid unnecessary motion practice, or even to reasonably accommodate scheduling; 5) Relentlessly pursued depositions of third parties without reasonable basis; 6) Unreasonably refuses to accept offers, such as assignment of right to collect on a settlement agreement, or for payment of that portion of the personal vehicle that JZK, Inc. originally claimed was non-exempt; and 7) Engaging in character assassination to further cause harm and distress to Coverdale while this appeal is pending.

---

[7] The documents were prepared in September, and therefore the Nissan Xterra is included, as Coverdale still owned it at that time.

**MOTION TO STAY ENFORCEMENT OF JUDGMENT**
**RAP 18.8(a)- 18**

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

The chilling effect that JZK, Inc.'s "collection" tactics are having on other potential claimants, as well as customers who simply want to shed light on the company's practices, should give pause when considering the detrimental impact on Coverdale and on the public in general. This is particularly relevant given the concerns expressed in the underlying case: Namely, that JZK, Inc.'s broad secrecy clause in its consumer contract, combined with large donations to local regulatory authorities, inherently allows it to avoid both public and governmental oversight. JZK, Inc.'s tactics simply serve to reinforce its customers' reluctance to voice concerns publicly or to authorities, thus also reinforcing JZK, Inc.'s ability to act without meaningful oversight into its practices.

The parties are currently embroiled in what has become an increasingly absurd display of reckless abandon by JZK, Inc. There are multiple motions noted for the upcoming weeks, including a hearing noted for February 21, 2014 where JZK, Inc. will likely continue its attempt to imprison Coverdale. The time has long since come and passed for some judicial authority to step in to rein in illegitimate tactics that serve no proper purpose, and which simply prejudice Coverdale's ability to focus on preparation of her appeal.

For all of the aforementioned reasons, Coverdale respectfully requests that this Court enter an Order staying all attempts at execution and/or collection of the judgment until after final appeal, or, in the alternative, issue an Order directing JZK, Inc. to Show Cause as to why it should remain able to engage in its collection tactics by presenting sufficient objective evidence justifying the same. Coverdale also requests an immediate Order staying the upcoming hearings on February 21, 2014 and February 28, 2014 to allow this Court time to consider this request – in the absence of that temporary stay, there is a significant risk of

**MOTION TO STAY ENFORCEMENT OF JUDGMENT**
**RAP 18.8(a)- 19**

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

permanent harm, especially given JZK, Inc.'s arguments to imprison Ms. Coverdale.

Signed this 18th day of February, 2014.

BRECKAN C.L.SCOTT, ATTORNEY & COUNSELOR OF LAW, PLLC

By: Breckan C. Scott, WSBA No. 41585
Co-Counsel for Appellant Coverdale

## CERTIFICATE OF SERVICE

I certify that I delivered, or caused to be delivered, a copy of the foregoing document on the 19th day of February, 2014 to the following counsel of record at the following addresses, pursuant to a reciprocal agreement for electronic service:

| Andrea McNeely | AMcNeely@gth-law.com |
| Eric Gilman | egilman@gth-law.com |
| Jeff Grant | JGrant@skellengerbender.com |
| Anthony Gipe | adgipe@shatzlaw.com |

Breckan Scott

**MOTION TO STAY ENFORCEMENT OF JUDGMENT**
**RAP 18.8(a)- 20**

BRECKAN C.L SCOTT
ATTORNEY & COUNSELOR OF LAW, PLLC
P.O BOX 1123 • YELM, WA • 98597
TEL. (360) 960-8951 • INFO@BRECKANLAW.COM

Case 17-04014-BDL    Doc 40-4    Filed 10/11/17    Ent. 10/12/17 09:38:45    Pg. 21 of 21